UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF PUERTO RICO

NERY MARTINEZ,

      Plaintiff,

          v.                            CIV. NO. 09-02265(PG)

EAGLE GLOBAL LOGISTICS (CEVA),
      Defendant.

**OPINION AND ORDER**

Plaintiff Nery Martinez ("Martinez") brought this action against Eagle Global Logistics ("CEVA") pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000 *et seq.*, the American with Disabilities Act ("ADA"), 42 U.S.C. §12111, and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §621 *et. seq.*, as well as the Fifth, Ninth, Tenth and Fourteenth Amendments of the United States Constitution. Martinez also invokes the Court's supplemental jurisdiction to decide on her claims pursuant to Puerto Rico Act No. 100, P.R. LAWS ANN. TIT. 29, §146 *et seq.* ("Law 100"), Puerto Rico Act No. 17, P.R. LAWS ANN. TIT. 29, §155 *et. seq.* ("Law 17"), Puerto Rico Act No. 69, P.R. LAWS ANN. TIT. 29, §1321 *et seq.* ("Law 69"), Articles 1802 and 1803 of the Puerto Rico Civil Code, P.R. LAWS ANN. TIT. 31, §§ 5141 and 5142, Puerto Rico Worker's Compensation Act, Act No. 45, P.R. LAWS ANN. TIT. 11, §1 *et seq.* ("Law 45"), Puerto Rico Act No. 115 of December 20, 1991, P.R. LAWS ANN. TIT. 29, §194 *et seq.* ("Law 115"),Puerto Rico Act No. 44, P.R. LAWS ANN. TIT. 1, §501 *et seq.* ("Law 44"), and Puerto Rico Act No. 80 of May 30, 1976, P.R. LAWS ANN. TIT. 29, §185 *et seq.* ("Law 80"). For the reasons set forth below, CEVA's motion to dismiss is **GRANTED IN PART AND DENIED IN PART.**

## I. Background

### A. Factual Background

The Court draws the following facts from Martinez's complaint and takes them as true for purposes of resolving CEVA's motion to dismiss.

Martinez was interviewed for the position of Customer Service Agent by Mr. Juan Carlos Severino who would also supervise Martinez. Martinez commenced working for Eagle US Airfreight on March 13, 2000. Martinez was promoted to Customer Service Supervisor in 2003. Mr. Severino would give Martinez's supervisees instructions that were incompatible with Martinez's own instructions without her knowledge. Mr. Severino would also assign Martinez's supervisees additional and/or different tasks than the ones Martinez would assign. Martinez claims that this situation created confusion and undermined her position. Martinez complained to both her supervisors in Puerto Rico and to CEVA's headquarters in the United Sates.

Around the same time Martinez felt severe stress and suffered from high blood pressure, emotional depression and other ailments. Martinez had an incident with one of her supervisees, Vivian Osorio, who threatened her with physical aggression and cursed at her.

On February 23, 2004, Martinez sought emotional treatment at the State Insurance Fund ("SIF") for stress, lack of sleep, high blood pressure, pressure in the head, nose bleeds, various episodes of hypertension, insomnia, and nervousness. Martinez received medical attention from February 23, 2004 to August 18, 2004.

On April 21, 2004, Martinez was diagnosed by the SIF with Moderate Recurrent Major Depressive Disorder. Martinez returned to work in August, 2004. Upon her return, Martinez was informed that her position as Customer Service Supervisor had been eliminated and that she would now work as an Inside Sales Representative. Martinez informed her supervisors that she was not qualified to work as an Inside Sales Representative. Martinez worked as an Inside Sales Representative for about four to six weeks and was then informed that the Inside Sales Representative position had been terminated. Martinez then returned to a position in Customer Service.

On June 15, 2005, Martinez tripped over some cables at work. She was unable to sleep due to pain and requested a referral to the SIF from

Mr. Juan Armstrong, the Station Manager. Mr. Armstrong told her that she
did not need a referral to go to the SIF. Approximately two to three
weeks after Martinez went to the SIF, Mr. Armstrong signed the referral
form.

Martinez received medical treatment from the SIF where she was
diagnosed with cervical lumbar pain syndrome with myospasms, right elbow
trauma, bilateral knees trauma, L4, L5, and left S1 disc protrusion, and
cervical dorsal lumbar muscular spasms, as well as an emotional
condition. Martinez is still being treated for her injuries. Martinez was
under medical rest from June 15, 2005, until December 14, 2005. Martinez
was again under medical rest from December 19, 2005, until April 5, 2006.

Martinez avers that after she returned from SIF it became a
practice that whenever she complained that something was not being done
by other employees, it was assigned to her instead. Martinez states that
it is around this time that a pattern of harassment commenced. Customer
Service employees would not respond to Martinez's emails, forcing
Martinez to use Mrs. Rosalyn Noriega, the Operations Manager, as an
intermediary. Mrs. Noriega began closely supervising Martinez, going to
such lengths as to move Martinez's desk so that she would be closer to
Mrs. Noriega, sending employees to look for Martinez in the bathroom when
she took an extended break and asking Martinez why she was talking to
another employee when Martinez spoke to a co-worker about one of her
clients. Around this time, Ms. Luisa Sanchez, Administrative Assistant to
the Station Manager, started to constantly contact Martinez to fill out
Missed Punch Slips.[1] Mrs. Sanchez would come in screaming at Martinez
when Martinez was on a conference call with a client. Martinez felt that
Mrs. Sanchez was disrespectful towards her and that Mrs. Sanchez treated
her differently from other employees.

On May 25, 2006, Martinez wrote an e-mail to Mrs. Noriega regarding
an incident having to do with some invoices that had occurred two days
prior. Martinez stated in her email that it was unacceptable that there
were many employees downstairs and that she had to spend the morning

---

[1] Despite the verbosity of this fact scenario, the Court did not receive an
explication of what the Missed Punch Slips are or what they entail. Nonetheless,
Martinez claims that she filled at least 17 Punch Slips between April and August 2006,
and another 38 Punch Slips between September and December 2007. Martinez asserts that
she was treated unequally because other employees were not forced to file Missed Punch
Slips or were allowed to file them after returning from lunch.

trying to get someone to pick up the documents. Martinez also mentioned
that she had been by herself answering the phones and doing the work of
other employees while also serving as a trouble shooter for CEVA. Lastly,
Martinez asked Mrs. Noriega if she would keep harassing her.

By late May 2006, Martinez was constantly crying, felt that she
had no support from management and that she was being sabotaged in
everything she did. Martinez believes that she was doing her job.
Martinez also believes that she was also doing the job of other
employees, specifically that of Mrs. Tina Gonzalez, Operations Specialist
and Jeannette Rexach, Operations Supervisor.

Martinez met with Dr. Salie E. Cameron Morales on June 1, 2006. Dr.
Cameron was in charge of Martinez's case at the SIF. Martinez told Dr.
Cameron that she was being subjected to harassment at work and was
suffering from depression. Dr. Cameron referred Martinez to a
Psychiatrist at the Multidisciplinary Clinic.

Martinez sent Mr. Armstrong an e-mail on June 12, 2006, complaining
about Mrs. Rivera's behavior toward her. The next day Mr. Armstrong
argued with Mrs. Rivera. During the argument, Mrs. Rivera stated that she
was not happy in Customer Service since Martinez had returned.

On August 9, 2006 Martinez wrote an e-mail to Mrs. Katy Rivers.[2]
Martinez informed Mrs. Rivers that things had gotten worse to the point
that Martinez felt scared and nervous to be at work, that she felt
persecuted by management and by Luisa Sanchez and that the situation was
affecting her work and her emotional health. Martinez asked to meet with
Mrs. Rivers several times but was ignored. In her e-mails, Martinez
complained about how she was treated at work. More specifically, she
complained about how someone in management told employees that their e-
emails sounded like Martinez's, that Martinez was referred to as a
problem, that Ms. Noriega required Martinez to do Ms. Tina Gonzalez's,
Operations Specialist, work and that other employees were unresponsive to
Martinez's work emails.

On August 15, 2006, Dr. Wilfredo Rendon from Hospital Auxilio Mutuo
filled a Medical Certificate in which he stated that Martinez was
suffering from lower back pain and herniated L5S1. Dr. Rendon stated in
the certificate that Martinez needed bed rest and analgesics. Dr. Rendon

---

[2] It is not entirely clear to the Court who Mrs. Katy Rivers is and what her
role is within CEVA.

also referred Martinez to the SIF. On that same date, Martinez was
ordered bed rest by the SIF.

Martinez remained under medically appointed rest for an emotional
condition from August 19, 2006, until January 12, 2007. On December 13,
2006, Martinez went to the SIF and requested permission to go to work.
Martinez was afraid to lose her job and wanted to return to work. On
December 14, 2006, Martinez was allowed to return to work and continued
to receive treatment for her condition. On December 13, 2006, Martinez's
psychiatrist at the SIF certified that Martinez was suffering from severe
isolation, anhedonia, depressive mood, feelings of frustration, and
passive suicide ideas. On that same date, Martinez informed Mrs. Noriega
that she might return to work the next day. Mrs. Noriega informed
Martinez that she would return to a Customer Service Specialist position.
Martinez returned to work on December 14, 2006, and was activated on the
computer system at CEVA's headquarters in Texas so she could clock in and
out.

When Martinez returned to work Mrs. Noriega informed her that the
Human Resources Department had placed her as an Inside Sales
Representative. Ms. Noriega also told Martinez that she wanted her to
train the new Customer Service Supervisor Zoraida Cordero and Amalia
Morales, a Customer Service employee that had been hired during
Martinez's absence.

On December 18, 2006, Mrs. Noriega, contacted Martinez and informed
her that she either had to accept an Inside Sales Representative or an
Operations Specialist II position. The job description for Operations
Specialist II was different from Martinez's position as Customer Service
Representative. Martinez told Ms. Noriega that she would be physically
unable to complete the job requirements of the Operations Specialist II
position. Martinez also asked for a list of duties and responsibilities
for the position. Mrs. Noriega informed Martinez that the description of
the position was available on Eaglenet, the intraoffice information
system. Martinez asked if she would get a raise if she took the
Operations Specialist II position and Mrs. Noriega answered that Martinez
already earned enough. Martinez also inquired why Mrs. Noriega had not
transferred one of the new employees to the Operations Specialist II
position and Ms. Noriega responded that she wanted Martinez downstairs.

On December 19, 2006, Mrs. Noriega asked Martinez if she had made a

decision regarding the offered position of Operation Specialist II. Martinez informed Mrs. Noriega that there was still nothing on the Eaglenet and that she wanted to read the job description before making a decision. Mrs. Noriega also told Martinez that she wanted her to perform both Customer Service Representative and the Operations Specialist II functions.

On December 19, 2006, Amalia Morales was told to change her sitting area away from Martinez. When Martinez inquired why that was the case, Mrs. Morales told Martinez that Mrs. Noriega had told her to go and sit down next to Mrs. Rivera because she was more "astute" than Martinez.

On December 20, 2006, Mrs. Noriega asked Martinez if she was interested in the Operations Specialist II position. Martinez reiterated her interest in knowing the duties of the position before making a decision. Mrs. Noriega then informed Martinez that it was an Operations Specialist IV position that was being created. Martinez rejected the Operations Specialist II position. Ms. Noriega told Martinez that her work hours would be changed and that Martinez would now become an Inside Sales Representative. Martinez objected to this change.

On January 3, 2007, Martinez did not receive payment for the time she worked from December 14, 2006, until December 29, 2006. Ms. Noriega told Martinez that she would contact the Human Resources Department in Houston, Texas and let her know. Ms. Noriega sent Martinez home. At a later point, Ms. Noriega told Martinez that Human Resources was unaware of her return to work. Ms. Noriega then told Martinez that the release form given to her by the SIF had not been accepted by the Human Resources Department; that Human Resources wanted a letter stating restrictions like her ability to climb stairs, how long Martinez could sit or stand, or how much weight Martinez could lift; that Martinez was prohibited from returning to work; and that Martinez would not get paid for the time previously worked or the time it took to get an acceptable release that included the above stated restrictions.

Martinez then visited the SIF and met with Attorney Robeldo Rivera. Attorney Rivera instructed Martinez to return to work, stating that SIF was under no obligation to provide her with such a release because her Customer Service job description did not have any of the three requirements CEVA was asking for. Attorney Rivera advised Martinez to go

the Department of Labor and Human Resources of Puerto Rico and file an Administrative Complaint against CEVA.

Martinez returned to work on January 9, 2007. Mrs. Noriega once again sent Martinez home. Martinez informed Mrs. Noriega about what Attorney Rivera had told her and that if there was any problem they had to contact the SIF. Before she left, Martinez had a meeting with Mr. Mark Carlson, a stateside executive.

Mr. Carlson asked Martinez if she had a lawyer and if she had given said lawyer's telephone number to Human Resources Department. Martinez explained what had happened with the SIF. Mr. Carlson told Martinez that he had to call Human Resources right away because there was confusion about the matter. Mr. Carlson then told Martinez to go home. Mr. Carlson asked Martinez to give him some time to straighten things out. Martinez told to Mr. Carlson that she felt harassed and that the whole situation was related to her not accepting the Operations Specialist II position. Mr. Carlson told Martinez that had nothing to do with it, and that they just need the information in case Martinez had to do filing work. Martinez's position did not require any filing duties. Later that day, Martinez sent an e-mail to Mr. Mark Carlson regarding their conversation.

On January 11, 2007, Martinez sent an e-mail to Mrs. Noriega, in which she discussed what had happened since January 3, 2007, and the meeting with Mr. Carlson. Martinez also questioned Mrs. Noriega about her request to return to her Customer Service position. Martinez stated that it was funny that on her day back, Mrs. Noriega had wanted to change her hours and position and now she found herself banned from the company with no salary. Finally, Martinez informed Mrs. Noriega that her phone had been disconnected, that her electricity would also be disconnected soon, and that she was behind on her mortgage payments. Martinez felt persecuted and retaliated against.

On January 15, 2007, Martinez was informed by Mrs. Noriega that she would contact Human Resources in Houston, Texas to keep her in the Customer Service position. The next day, Martinez wrote an e-mail to Mrs. Noriega, Mrs. Katy Rivers, and Mrs. Christina Polanski. In it, Martinez inquired about returning to work and her unpaid hours. Martinez informed them that she had been unable to pay her doctor or get her medication due to the fact that she had yet to receive her payment. Martinez stated that she felt she had no support from the San Juan office.

On January 25, 2007, Martinez filed a Disability and Age Discrimination Administrative Complaint before the Anti-Discrimination Unit of Puerto Rico against CEVA. On or around January 25, 2007, Emilio Acosta, a new Station Manager, called Martinez asking her to return to work to the Insides Sales Representative position. Martinez accepted because she had no other choice and was afraid to be fired if she did not accept the position. When Martinez returned to work, she was paid for the period she worked during December 2006. Martinez was also compensated for the time she was prohibited from coming back to work. Martinez returned to work without having obtained the authorization from SIF and CEVA never asked for those restrictions.

On or around the end of January 2007, Mrs. Wendy Lopez was transferred to a Customer Service position that Martinez was fully qualified to occupy. Mrs. Lopez had recently returned from a SIF related leave. Mrs. Lopez later resigned.

On February 5, 2007, Mrs. Maria E. Guerrero, a CEVA Risk Manager, requested that Martinez sign a letter stating that she was returning to work without any restrictions or limitations. Mrs. Guerrero told Martinez that she was not satisfied with SIF's failure to include any restrictions on Martinez's authorization to return to work. Mrs. Guerrero informed Martinez that since she was accepting Martinez's return to work with no restrictions, Martinez was able to climb stairs, lift boxes of any weight and sit or stand for long periods of time and that if anyone, including Mrs. Guerrero asked Martinez to do so and she refused, Mrs. Guerrero would have her fired. Mrs. Guerrero went as far as telling Martinez that if Martinez searched for another job, that no one would hire her under her condition. Martinez felt offended and threatened by Mrs. Guerrero.

Martinez required medical attention as a result from her interactions with Mrs. Guerrero because her blood pressure was too high. Martinez received medical attention from Dr. Jorge Mendez Santiago, who recommended bed rest for a few days because Martinez's blood pressure was too high. On February 15, 2007, Martinez sent an e mail to Mrs. Guerrero regarding these events.

On June 1, 2007, Martinez wrote an e-mail to Mrs. Denise Moore, Regional Human Resources Manager, to report an incident with Mrs. Luisa Sanchez, Administrative Assistant. Martinez denounced that she felt persecuted and that the situation was affecting her both physically and

emotionally and could not concentrate on her work. Martinez stated that Mrs. Sanchez was constantly watching her to the point where she felt harassed. Martinez also complained that Mrs. Sanchez called CEVA employees when they were speaking to Martinez and that Mrs. Sanchez listened to Martinez's conversations and made remarks or insinuations. Martinez also informed Mrs. Moore that she was tired of crying and feeling isolated from everyone because of Mrs. Sanchez. On June 25, 2007, Martinez again tried to contact Mrs. Moore, to denounce the lack of action taken by Mr. Emilio Acosta, Station Manager, regarding problems with his Administrative Assistant, Mrs. Sanchez.

On August 29, 2007, Martinez wrote another e-mail to Mrs. Moore. Martinez informed Mrs. Moore of Mr. Acosta's comments and attitude. Martinez also denounced various situations regarding Mrs. Sanchez, including an incident in which Mrs. Sanchez put her hand in front of Martinez's face and said that she was not talking to Martinez.

Mr. Acosta spoke with Martinez and told her that he was not very happy about Martinez talking to Human Resources about their conversations or her concerns. Mr. Acosta stated that he did not want anyone going to Human Resources in the United States and that those things should have been resolved locally. Mr. Acosta further told Martinez that she had to get used to Mrs. Sanchez's behavior.

On September 19, 2007, Martinez wrote a note regarding a late pick up that had affected one of her clients. Martinez wrote that she felt she had no support from management. Towards the end of December 2007, Martinez became sick with asthma attacks triggered by the emotional stress she was suffering due to the hostile work environment.

On or around January 16, 2008, Martinez was talking to Zoraida Cordero, Customer Service Supervisor, about a follow up on an e-mail she had sent to Mrs. Gonzalez, regarding a customer service issue. Martinez had asked Mrs. Cordero to appoint someone in the Customer Service Department that Martinez could email to and would respond promptly. Mrs. Cordero had the conversation on speaker and Mrs. Gonzalez was listening in on the conversation. While Martinez was still talking to Mrs. Cordero, Mrs. Gonzalez, stormed in accusing Martinez of talking about her. Martinez perceived that Mrs. Gonzalez seemed like she was ready for a fight and was speaking in a very loud voice. Martinez felt threatened and harassed by Mrs. Gonzalez. Mrs. Gonzalez waved her hands in front of

Martinez's face in a threatening way. Martinez asked Mrs. Gonzalez to stop the threatening gestures and Mrs. Gonzalez answered she would keep on doing it. Martinez felt disrespected and threatened. Mrs. Cordero violated CEVA's own policies by not investigating or reporting the incident to the Human Resources Department and/or by not taking any remedial actions or corrective measures.

According to Martinez, customers would call her directly because Mrs. Gonzalez was not doing her job and would not pick up the phone. Martinez also cites to an incident where Mrs. Gonzalez transferred a call to her without informing her who the caller was, thereby making her job more difficult.

On January 17, 2008, Martinez wrote an e-mail to Mr. Acosta titled "Complaint." Martinez outlined the incidents that had ocurred and stated that she could not take the situation anymore. Martinez stated that she was tired of doing Customer Service work, which she had been supposedly banned from performing, but still had to do. Martinez requested Mr. Acosta's help with the situation stating that it was affecting both the customers and her health.

In violation of CEVA's harassment and employment policies, Mr. Acosta did not report the incident to Human Resources or any member of management. Mr. Acosta did not investigate Martinez's complaint or take remedial actions, also in violation of CEVA's policies.

Martinez was treated by Dr. Jorge R. Mendez Santiago from January 28, 2008, until February 21, 2008, due to asthmatic bronchitis and cervical myositis. Martinez was given various Certificates to Return to Work and Attending Physician Statements regarding her treatment. Between March 11, 2008, and May 22, 2008, Martinez had to seek treatment from Dr. Pedro Paez Gonzalez due to the bronchial asthma, enterocolitis, migraine, hypertension, chest pain, major depression, severe anxiety, tremors, and shortness of breath.

Martinez claims that every time she was at home recuperating from her medical condition she received calls from CEVA asking when she would return to work. On one occasion, Martinez contacted Mrs. Guerrero to inquire about a short-term disability license and some unpaid hours that were due to Martinez through her medical leave. Mrs. Guerrero informed Martinez that she was not worried about the license, but stated that she was worried about when Martinez would return to work.

While Martinez was on medical leave and medically ordered bed rest, CEVA did not pay her sick leave benefits. It was not until May 2, 2008, that Martinez received three payments of $564.57, $503.57 and $442.59 for a total of $1,510.73. CEVA paid Martinez the above mentioned amounts out of her vacation and sick leave benefits, in effect liquidating all of the vacation and sick leave benefits she had accrued.

On May 19, 2008, Jackie Palomino, Benefits Leave of Absence Specialist, sent Martinez a letter regarding her Family Medical Leave Act license request. In it, Mrs. Palomino requested that Martinez's physician fill out a form and send it to them by noon on May 20, 2008.

Martinez returned to work on May 22, 2008. Martinez attended a meeting where she was informed by an employee at the Human Resources offices in Houston, Texas that she was no longer needed because CEVA was not doing well financially.

Martinez believes that the Human Resources representative came to Puerto Rico to fire her and also interview another person for a Customer Service Specialist position. Martinez was not given a dismissal letter stating the reasons for her termination. As a result, Martinez was unable to request unemployment benefits or food stamps. Martinez requested the dismissal letter from Mr. Emilio Acosta and later from Human Resources and was informed that they were not going to give her one.

On September 8, 2008, Martinez was released by the SIF with a 30% disability on her work-related emotional condition defined as Major Depression Disorder Recurrent Moderate. Martinez was referred to a facility in Carolina, Puerto Rico in order to continue receiving treatment for her condition.

On that same date, Mrs. Ivonne Rolon, a SIF employee, informed Martinez that a possible reason why Global Eagle Logistics wanted Martinez to quit or fire her was because CEVA did not have SIF insurance coverage when Martinez fell at work on May 20, 2005.

## II. Standard of Review

### A. Rule 12(b)(6)

When ruling on a motion to dismiss for failure to state a claim, a district court "must accept as true the well-pleaded factual allegations of the complaint, draw all reasonable inferences therefrom in the plaintiff's favor, and determine whether the complaint, so

read, limns facts sufficient to justify recovery on any cognizable
theory." Rivera v. Centro Medico de Turabo, Inc., 575 F.3d 10, 15
(1st Cir. 2009) (citing LaChapelle v. Berkshire Life Ins. Co., 142
F.3d 507, 508 (1st Cir. 1998)). Courts "may augment the facts in the
complaint by reference to (I) documents annexed to the complaint or
fairly incorporated into it, and (ii) matters susceptible to judicial
notice." Gagliardi v. Sullivan, 513 F.3d 301, 306 (1st Cir. 2008)
(internal citations and quotation marks omitted).

       "Yet [the Court] need not accept as true legal conclusions from
the complaint or naked assertions devoid of further factual
enhancement." Maldonado v. Fontanes, 568 F.3d 263, 266 (1st Cir. 2009)
(citing Ashcroft v. Iqbal, 129 S. Ct. 1937, 1960 (2009)). Although a
complaint attacked by a motion to dismiss pursuant to Federal Rule of
Civil Procedure 12(b)(6) "does not need detailed factual allegations,
. . . a plaintiff's obligation to provide the grounds of his
entitlement to relief requires more than labels and conclusions, and a
formulaic recitation of the elements of a cause of action will not
do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)
(internal citations and quotation marks omitted). Moreover, "even
under the liberal pleading standard of Federal Rule of Civil Procedure
8, the Supreme Court has . . . held that to survive a motion to
dismiss, a complaint must allege a plausible entitlement to relief."
Rodriguez-Ortiz v. Margo Caribe, Inc., 490 F.3d 92, 95 (1st Cir. 2007)
(citing Twombly, 550 U.S. 544 (2007)).

       "A claim has facial plausibility when the plaintiff pleads
factual content that allows the court to draw the reasonable inference
that the defendant is liable for the misconduct alleged." Iqbal, 129
S. Ct. at 1949 (citing Twombly, 550 U.S. at 556). That is, "[f]actual
allegations must be enough to raise a right to relief above the
speculative level . . . on the assumption that all the allegations in
the complaint are true (even if doubtful in fact) . . . ." Twombly,
550 U.S. at 555 (internal citations and quotation marks omitted). In
other words, while the Rule 8 pleading standard does not require
detailed factual allegations, it "demands more than an unadorned, the
defendant-unlawfully-harmed-me accusation." Iqbal, 129 S. Ct. at 1949.
"Determining whether a complaint states a plausible claim for relief
will . . . be a context-specific task that requires the reviewing

court to draw on its judicial experience and common sense." Id. at
1950.

 "In resolving a motion to dismiss, a court should employ a
two-pronged approach. It should begin by identifying and disregarding
statements in the complaint that merely offer legal conclusions
couched as fact or threadbare recitals of the elements of a cause of
action." Ocasio-Hernandez v. Fortuno-Burset, 640 F.3d 1, 12 (1st Cir.
2011) (citing Twombly, 550 U.S. at 555) (internal quotation marks
omitted). However, "[n]on-conclusory factual allegations in the
complaint must then be treated as true, even if seemingly incredible."
Id. at 12 (citing Iqbal, 129 S.Ct. at 1951).

 "Although evaluating the plausibility of a legal claim requires
the reviewing court to draw on its judicial experience and common
sense,..., the court may not disregard properly pled factual
allegations, even if it strikes a savvy judge that actual proof of
those facts is improbable." Ocasio-Hernandez,640 F.3d at 13 (citing
Iqbal, 129 S. Ct. at 1950; Twombly, 550 U.S. at 556) (internal
citations and quotation marks omitted). Furthermore, "a well-pleaded
complaint may proceed even if ... a recovery is very remote and
unlikely." Id. (citing Twombly, 550 U.S. at 556) (internal quotation
marks omitted). Thus, "[t]he relevant inquiry focuses on the
reasonableness of the inference of liability that the plaintiff is
asking the court to draw from the facts alleged in the complaint." Id.

## III. Discussion

### A.    Title VII

 A Title VII plaintiff must file a timely EEOC charge against the
discriminatory party. 42 U.S.C. §2000e-5(f)(1). Similarly, plaintiffs
must file an EEOC charge before filing an ADEA and a Title I ADA claim
in federal court. See Powers v. Grinnell Corp., 915 F.2d 34, 38 (1st
Cir. 1990); Rodriguez Velazquez, et al. v. Autoridad Metropolitana de
Autobuses, 502 F.Supp.2d 200, 207 (D.P.R. 2007).

 "With limited exceptions, [...], the failure to exhaust this
administrative process bars the courthouse door." Franceschi v. U.S.
Dept. of Veterans Affairs, 514 F.3d 81, (1st Cir. 2008) (citing
Bonilla v. Muebles J.J. Álvarez, Inc., 194 F.3d 275, 278 (1st Cir.
1999)). In Puerto Rico, administrative filings must take place within

300 days of the alleged unlawful employment practice. Id. (citing Frederique-Alexandre v. Dept. of Natural and Envtl. Res. of P.R., 478 F.3d 433, 437 (1st Cir. 2007)).

The First Circuit has also recognized that the scope of a civil complaint is limited by the charge filed with the EEOC, but clarified that the civil complaint may also include "the investigation which can reasonably be expected to grow out of that charge." Lattimore v. Polaroid Corp., 99 F.3d 456, 464 (1st Cir. 1996)(citing Powers, 915 F.2d at 38 (1st Cir. 1990)); see also White v. New Hampshire Dep't of Corr., 221 F.3d 254, 263 (1st Cir. 2000) ("The exact wording of the charge of discrimination need not presage with literary exactitude the judicial pleadings which may follow . . . . Rather, the critical question is whether the claims set forth in the civil complaint come within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination.") Also, a plaintiff's failure to check the retaliation box on the EEOC complaint form does not necessarily bar a retaliation claim if the plaintiff submits a narrative with the EEOC complaint form that sufficiently places the EEOC on notice of the retaliation claim. Shaw v. M.S.A.D. # 61, No. 00-217-P-C, 2001 U.S. Dist. LEXIS 20898 at *16 (D.Me Jan. 22, 2001).

Martinez avers that the administrative charge is not a blueprint for litigation and that she did exhaust the administrative remedies. See Fantini v. Salem State College, 557 F.3d 22, 27 (1st Cir. 2009). The First Circuit held that the exact wording of the charge of discrimination need not presage with literary exactitude the judicial pleadings which may follow. Id. at 27 (citing Tipler v. E.I. duPont deNemours & Co., 443 F.2d 125, 131 (6th Cir. 1971) (internal citations and quotation marks omitted). The First Circuit further clarified that when considering whether or not administrative remedies have been exhausted, the critical question is whether the claims set forth in the civil complaint come within the scope of the EEOC investigation that can reasonably be expected to grow out of the charge of discrimination. Id. (citing Sanchez v. Standard Brands, Inc., 431 F.2d 455, 466 (5th Cir.1970); Babrocky v. Jewel Food Co., 773 F.2d 857, 863 (7th Cir. 1985); Miller v. International Telephone and Telegraph Corp., 755 F.2d 20, 23-24 (2d Cir. 1985); Less v. Nestle Co., Inc.,

705 F.Supp. 110, 112 (W.D.N.Y. 1988)) (internal citations and quotation marks omitted). Thus, as was stated in <u>Powers</u> Title VII claims are cognizable if they are like or reasonably related to the allegations of the charge and grow out of those allegations. 915 F.2d at 38-39. In Fantini, the plaintiff met his burden because the EEOC charge he filed described a disparate treatment incident and because he further stated and alleged that his firing was a pretext for gender discrimination, which was the type of discrimination that he alleged in the complaint. 557 F.3d at 27.

In this case, Martinez filed an administrative complaint with the Anti-Discrimination Unit ("ADU") *pro se*. In that administrative complaint, Martinez marked age and disability as the causes of discrimination. (Docket No. 41, Exhibit 1). Martinez amended her administrative complaint on September 17, 2008. In her amended administrative complaint, Martinez again marked age and disability as the causes of discrimination (Docket 41, Exhibit 2). Martinez does mention that she was subjected to a hostile work environment in her ADU complaint. However, both complaints are devoid of any mention that would suggest that Martinez was subjected to gender discrimination or any other protected category under Title VII. As a result, the Court is unable to conclude that Martinez exhausted administrative remedies in relation to her Title VII claim.

Martinez also advances a claim of retaliation under Title VII. "A claim of retaliation for filing an administrative charge with the EEOC is one of the narrow exceptions to the normal rule of exhaustion of administrative remedies. Such a claim may ordinarily be bootstrapped onto the other Title VII claim or claims arising out of the administrative charge and considered by the district court, even though it has not been put through the administrative process." <u>Franceschi v. U.S. Dept. of Veterans Affairs</u>, 514 F.3d 81, 86 (1st Cir. 2008)(citing <u>Clockedile v. New Hampshire Dept. of Corrections</u>, 245 F.3d 1 (1st Cir. 2001)). Thus, a retaliation claim survives a failure to exhaust administrative remedies due to its close relation to and origins in the other Title VII discrimination claim. However, when administrative remedies have not been exhausted with respect to any of the other Title VII claims, there is nothing properly before the Court. <u>Francheschi</u>, 514 F.3d at 86.

In summary, the Court is unable to make the reasonable inference that Martinez exhausted the administrative remedies available to her. Martinez's administrative claim does not refer or allude to gender or any Title VII protected category in any form. Consequently, the Court cannot conclude that Martinez's charge sufficiently provided CEVA with prompt notice of the claims against it. Martinez does not specifically describe an alleged incident of gender discrimination and does not explicitly state her claim. As a result, the Court finds the dismissal of Martinez's Title VII claim appropriate. Similarly, Martinez's retaliation claim under Title VII is also dismissed.

**B. ADA Claim**

The ADA disallows discrimination against qualified individuals on the basis of disability with regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment. 42 U.S.C. §12112. The "ADA incorporated the exhaustion requirements applicable to Title VII discrimination suits." Rodriguez Velazquez v. Autoridad Metropolitana de Autobuses, 502 F.Supp.2d 200, 207 (D.P.R. 2007).

Martinez alleges that she was discriminated, retaliated, and subjected to a hostile work environment on account of her disability. Martinez seems to assert that she was subjected to disability discrimination because: (1) she was terminated as a result of her disability, (2) CEVA's agents or employees purposely and recklessly failed to process her sick leave benefits and withheld her sick leave payments, and (3) CEVA did not provide adequate accommodations for Martinez to attend scheduled medical appointments.

To prove disparate treatment under the ADA, a plaintiff must first show that: (1) she suffers from a disability as defined by the ADA; (2) she was nevertheless able to perform the essential functions of her job, with or without reasonable accommodation; and (3) her employer took an adverse employment action against her because of her protected disability. Faiola v. APCO Graphics, Inc., 629 F.3d 43, 47 (1st Cir. 2010)(citing Carroll v. Xerox Corp., 294 F.3d 231, 237 & n. 3 (1st Cir. 2002)). To make out a reasonable accommodation claim, a plaintiff must establish the first two prongs set forth above and also

that the employer knew of her disability but did not reasonably accommodate it upon a request. Id. (citing Carroll, 294 F.3d at 237-38)(quotation marks omitted).

CEVA argues that Martinez failed to advance any allegations of discrimination on account of a disability. CEVA further argues that Martinez failed to exhaust administrative remedies because her complaint refers to incidents that do not relate to what she alleged in her administrative charges. According to CEVA, then, Martinez is precluded from advancing claims for discrimination, retaliation, and hostile work environment.

Martinez's administrative charge states that she was discriminated, persecuted, and subjected to retaliation on account of her emotional condition and her physical condition. The Court finds that Martinez sufficiently exhausted administrative remedies. As such, the Court concludes that the hostile work environment, discrimination, and retaliation claims under ADA are permissible. "The purpose behind the exhaustion requirement is to give the employer timely notice of the events as well as provide an opportunity for an early amicable resolution of the controversy. "That purpose would be frustrated ... if the employee were permitted to allege one thing in the administrative charge and later allege something entirely different in a subsequent civil action." Rodriguez Velazquez v. Autoridad Metropolitana de Autobuses, 502 F.Supp.2d 200, 208 (citing Lattimore v. Polaroid Corp., 99 F.3d 456, 464 (1st Cir. 1996)). Martinez's administrative charge sufficiently meets this standard.

CEVA cites to Rodriguez Velazquez for the proposition that Martinez is confined to the allegations expressed in her administrative charge. However, the caselaw in our Circuit is clear, "[t]he scope of the civil complaint is ... limited by the charge filed with the EEOC and the investigation which can reasonably be expected to grow out of that charge." Lattimore, 99 F.3d at 464 (citing Powers, 915 F.2d at 38). The scope of Martinez's complaint does not exceed the boundaries of the EEOC investigation that could have been expected to grow out of her charge. As a result, the Court finds that Martinez sufficiently exhausted her administrative remedies in relation to her ADA discrimination, hostile work environment charge.

CEVA goes on to argue that Martinez's discrimination claim is based on a discrete act and is effectively time-barred. In her complaint, Martinez claims that her transfer to an Inside Sales position in August 2004, was the result of discriminatory animus. Martinez did not file her first administrative charge until 2007. The Court acknowledges that this claim falls outside the 300-day limitation period. However, Martinez has advanced a hostile work environment claim. The Supreme Court stated that as long as an act contribution to the hostile work environment claim occurs within the filing period, the entire period of the hostile environment may be considered by a court for purposes of determining liability. Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 120 (2002). The Court has already stated that Martinez's hostile work environment claim is not foreclosed, as a result the Court finds that the August 2004, claim is permissible as part of Martinez's hostile work environment claim. Similarly, the Court finds no reason to dismiss Martinez's January 2007, claim. The Court understands that Martinez has advanced a plausible hostile work environment claim in accordance with Iqbal's standards.

CEVA proceeds to target Martinez's allegation that she was discriminated because she had a record of impairment as an individual with a disability. CEVA, again, argues that Martinez's record of impairment claim is not included in her administrative charge and cannot be included in the complaint. Again, CEVA seems to misunderstand the purpose of filing an administrative claim. "The purpose behind the exhaustion requirement is to give the employer timely notice of the events as well as provide an opportunity for an early amicable resolution of the controversy. That purpose would be frustrated ... if the employee were permitted to allege one thing in the administrative charge and later allege something entirely different in a subsequent civil action." Rodriguez Velazquez, 502 F.Supp.2d at 207(citing Lattimore, 99 F.3d at 464) (internal citation and quotation marks omitted). An administrative charge does not need to be an exacting complaint.

In the alternative, CEVA argues that the record of impairment claims should be dismissed due to Martinez's failure to plead facts sufficient to substantiate her claim. The ADA provides that a

plaintiff may demonstrate the presence of a disability via having a record of such an impairment, or by being regarded as having such an impairment. 42 U.S.C. § 12102(2)(B) & ©; see Carroll v. Xerox Corp., 294 F.3d 231, 238 & fn. 4 (1st Cir. 2002).

Martinez's ADA claim is premised on a record of impairment theory. However, merely showing that a plaintiff has a record of impairment is insufficient. A plaintiff must show that he or she has a record of impairment that limits a major life activity. In order to come within the record of impairment category, Martinez must show that she has an impairment that substantially limited one or more life activities and that the limitation was permanent or long-term. Brown v. Hartt Transp. Systems, Inc., 725 F.Supp.2d 210, 236 (D.Me. 2010)(citing Ruiz Rivera v. Pfizer Pharms., LLC, 521 F.3d 76, 83 (1st Cir. 2008); Guzman-Rosario v. UPS, 397 F.3d 6, 10 (1st Cir. 2005)).

Martinez's impairments can be categorized into two, mental impairments and physical impairments. According to Martinez, her mental impairments limited her ability to learn, think, sleep and interact with others. Martinez avers that to this day she suffers from insomnia.

Martinez's physical impairments manifested themselves as back problems, back and knee strains, hypertension, tremors, abdominal pain, nausea, anxiety related anorexia and others. Martinez avers that her ability to move is limited by her back condition and that she requires a cane. Martinez also claims that she is under intense pain.

Under a record of impairment theory, Martinez must show that: 1) there is a record of her condition; 2) that her condition substantially limits one of her major life activities; and 3) that CEVA's decision to terminate her was based on her record. Rivera-Mercado v. Scotiabank De Puerto Rico, 571 F.Supp.2d 279, 287-88 (D.P.R. 2008).

At this juncture in the case, Martinez has advanced a plausible claim that there is a record of her condition, that her condition limits one or more major life activities, and that CEVA terminated her on the basis of her record of impairment. Therefore, the Court finds no reason to dismiss her record of impairment claim. The Court also disagrees with CEVA's contention that Martinez has only advanced conclusory allegation's that fail to meet Iqbal's requirements.

In summary, the Court finds that Martinez has advanced plausible ADA claims alleging discrimination, harassment, hostile work environment, and retaliation.

## C. ADEA Discrimination Claim

Martinez's third cause of action is brought pursuant to ADEA. ADEA states that it is unlawful for an employer to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age. 29 U.S.C. § 623(a)(1). "The Supreme Court recently clarified that, regardless of whether direct or circumstantial evidence is used to support an ADEA claim, and of whether a burden-shifting analysis is employed by the court, plaintiffs must establish that age was the but-for cause of the employer's adverse action." Mojica v. El Conquistador Resort and Golden Door Spa, 714 F.Supp.2d 241, 253 (D.P.R. 2010)(citing Gross v. FBL Fin. Servs., Inc., 129 S.Ct. 2343, 2351 (2009)) (internal quotations omitted). "The Court declared in Gross that this but-for standard is a much higher standard than that which has been applied in Title VII cases." Id. (internal quotations omitted).

"A plaintiff must prove by a preponderance of the evidence (which may be direct or circumstantial), that age was the but-for cause of the challenged employer decision." Gross, 129 S.Ct. at 2351 (citing Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 141, 143, (2000)(internal quotations omitted). When there is no direct proof of discrimination, a plaintiff may rely on the three-stage burden-shifting framework outlined by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See Mojica, 714 F.Supp.2d at 253. The first stage of the McDonnell Douglas scheme requires a showing of prima facie discrimination via the showing that the plaintiff alleging employment discrimination: (1) was at least 40 years old at the time of the adverse employment action complained of; (2) her job performance met or exceeded the employer's legitimate expectations; (3) her employer actually or constructively discharged her [or subjected her to other adverse employment actions]; and (4) her employer had a continuing need for the services she had been performing. Mojica, 714 F.Supp.2d at 253 (citing Torrech-Hernandez v.

General Elec. Co., 519 F.3d 41, 48 (1st Cir.2008)). A plaintiff who
makes a *prima facie* showing is entitled to a presumption of age-based
discrimination. Mojica, 714 F.Supp.2d at 253 (citing Velez v. Thermo
King de Puerto Rico, Inc., 585 F.3d 441, 447 (D.P.R. 2009)).

After the plaintiff establishes a *prima facie* showing of age-
based discrimination:

> "The burden of production then shifts to the employer
> to articulate a legitimate, non-discriminatory reason
> for its decisions. If the employer articulates such a
> reason, the McDonnell Douglas framework-with its
> presumptions and burdens-is no longer relevant. At
> this stage, the sole remaining issue is discrimination
> *vel non*. A plaintiff must be afforded the opportunity
> to prove by a preponderance of the evidence that the
> legitimate reasons offered by the defendant were not
> its true reasons, but were a pretext for
> discrimination. Ultimately, the plaintiff's burden is
> to prove that age was the but-for cause of the
> employer's adverse action."

Mojica, 714 F.Supp.2d at 253 (citing Thermo King, 585 F.3d at 447-48).

The Court recognizes that Martinez's amended complaint states
that age was a motivating factor rather than the but-for cause for her
dismissal. The Twombly Court clarified that "requiring a plaintiff to
show a plausible entitlement to relief was not the same as imposing a
heightened pleading requirement, and [is] therefore not inconsistent
with the Supreme Court's previous declaration in Swierkiewicz v.
Sorema N.A., 534 U.S. 506 (2002), that a court may not insist on the
allegation of specific facts that would be necessary to prove the
claim at trial." Ocasio-Hernandez, 640 F.3d at 17 (citing Twombly, 550
U.S. at 570) (internal quotation marks omitted). In other words, the
Twombly court emphasized that in order to survive a motion to dismiss,
a claim must be plausible.

In Iqbal, the Supreme Court adopted a two-prong approach in
dealing with motions to dismiss. "Under this approach, a court

resolving a Rule 12(b)(6) motion to dismiss should begin by separating a complaint's factual allegations from its legal conclusions." Ocasio-Hernandez, 640 F.3d at 19 (citing Iqbal, 129 S. Ct. at 1949-50). "The second prong of the approach endorsed by the Iqbal Court requires a reviewing court to accept the remaining factual allegations in the complaint as true and to evaluate whether, taken as a whole, they state a facially plausible legal claim." Id. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949. The Iqbal decision echoed Twombly in its emphasis that a complaint may not stand simply on the "sheer possibility" that a defendant acted unlawfully or on facts that are merely consistent with a defendant's liability. Ocasio-Hernandez, 640 F.3d at 20 (citing Iqbal, 129 S. Ct. at 1949)(internal quotation marks omitted). The Iqbal decision also highlights that evaluating whether or not a legal claim is plausible is context-specific and requires the reviewing court to draw on its judicial experience and common sense. Id. (citing Iqbal, 129 S. Ct. at 1949)(internal quotation marks omitted).

The First Circuit recently held that dismissal of a complaint pursuant to Rule 12(b)(6) is inappropriate if the complaint satisfies Rule 8(a)(2)'s requirement of a short and plain statement of the claim showing, that the pleader is entitled to relief. Ocasio-Hernandez, 640 F.3d at 22 (citing Fed. R. Civ. P. 8(a)(2)). A short and plain statement only requires sufficient detail to provide a defendant with fair notice of what the claim is and the grounds upon which it rests. Ocasio-Hernandez, 640 F.3d at 20 (citing Twombly, 550 U.S. at 555). "However, in order to show an entitlement to relief a complaint must contain enough factual material to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Id. (citing Twombly, 550 U.S. at 555) (internal citations and quotation marks omitted). Furthermore, it is insufficient for a complaint to plead facts that are merely consistent with a defendant's liability in order to establish a plausible entitlement to relief. See Iqbal, 129 S. Ct. at 1949 (quoting Twombly, 550 U.S. at 557). Nonetheless, a well-pleaded complaint may proceed even if recovery seems remote and unlikely.

Ocasio-Hernandez, 640 F.3d at 25-26 (citing Twombly, 550 U.S. at 556).
Thus, "[t]he relevant inquiry focuses on the reasonableness of the
inference of liability that the plaintiff is asking the court to draw
from the facts alleged in the complaint. Ocasio-Hernandez, 640 F.3d at
26.

    Turning to the claim at issue, the Court concludes that Martinez
has not presented a plausible claim of discrimination due to her age.
Martinez's complaint fails to show an entitlement to relief because it
does not contain sufficient factual material to raise a right to
relief under ADEA above the speculative level even if all the
allegations in the complaint are taken as true. Thus, the Court finds
it appropriate to dismiss Martinez's ADEA discrimination claim.

    Martinez pleads a hostile work environment claim under ADEA. The
First Circuit held that hostile work environment claims under ADEA
must show that: (1) they are a member of a protected class; (2) they
were subjected to unwelcome harassment; (3) the harassment was based
on age; (4) the harassment was sufficiently pervasive or severe so as
to alter the conditions of Plaintiff's employment and create an
abusive work environment; (5) the objectionable conduct was both
objectively and subjectively offensive such that a reasonable person
would find it hostile or abusive and that the plaintiff did in fact
perceive it to be so; and (6) some basis for employer liability has
been established. Mojica, 714 F.Supp.2d at 260. "A court, determining
whether an environment is sufficiently hostile or abusive, must
examine the totality of the circumstances including the frequency of
the discriminatory conduct; its severity; whether it is physically
threatening or humiliating, or a mere offensive utterance; and whether
it unreasonably interferes with an employee's work performance." Id.
(citing Harris v. Forklift Systems, Inc., 510 U.S. 17, 23 (1993))
(internal citations and quotation marks omitted). Furthermore,
"[s]imple teasing, offhand comments, and isolated incidents (unless
extremely serious) do not create a hostile work environment." Id.
(citing Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998). The
Court's function is to screen and determine whether or not, on
particular facts, a reasonable jury could reach such a conclusion.
Noviello v. City of Boston, 398 F.3d 76, 94 (1st Cir.2005).

In this case, it is undisputed that Martinez was a member of a
protected class. However, Martinez fails to present any indication
that she suffered harassment due to her age beyond her general and
conclusory statements. In her motion in opposition, Martinez argues
the her allegation that a 35 year old Customer Service Supervisor was
hired while Martinez was on sick leave, in combination with her
detailed factual allegations, is sufficient to support a claim for
relief under ADEA. The Court does not agree. As a result, the Court
finds it appropriate to dismiss Martinez's hostile environment claim
under ADEA.

Martinez also makes a retaliation claim under ADEA. ADEA protects
individuals who invoke its protection. Mojica, 714 F.Supp.2d 261.
"Where there is no direct evidence of retaliation, the plaintiff may
proceed to establish a *prima facie* case that closely tracks the
McDonnell Douglas framework: the plaintiff must show that (1) he
engaged in ADEA-protected conduct; (2) he was thereafter subjected to
an adverse employment action; and (3) a causal connection existed
between the protected conduct and adverse action." Id. (citing Ramirez
Rodriguez v. Boehringer Ingelheim Pharmaceuticals, Inc., 425 F.3d 67,
84 (1st Cir. 2005)).

Martinez fails to show a causal connection between the adverse
employment action taken against her and the filing of her
administrative charge. Martinez is unable to cite to direct evidence
such as retaliatory comments that would prove that CEVA engaged in
retaliatory conduct. Neither does Martinez argue that her dismissal is
so temporally close to her administrative charge that it evidences the
presence of retaliation. As a result, the Court finds it appropriate
to dismiss Martinez's ADEA retaliation claim.

## D. Constitutional Claims

Martinez concedes to the dismissal of her claims under the Fifth,
Ninth, Tenth and Fourteenth Amendments of the United States
Constitution. Therefore these claims are hereby dismissed.

## E. State Law Claims

Martinez also invokes the Court's supplementary jurisdiction to
decide her claims arising under Law 100, Law 17, Law 69, Law 45, Law

44, Law 115, Law 80 and Article 1802 and 1803 of the Puerto Rico Civil Code.

### 1. Claims under Law 100, Law 69, and Law 17

Martinez's amended complaint includes state law claims under Law 100, Law 69 and Law 17. The statute of limitations for these causes of action is one year. P.R. LAWS ANN. tit. 31 §5298(2); see also Olmo v. Young & Rubicam of Puerto Rico, 10 P.R. Offic. Trans. 965 (1981). As a result, Martinez had until May 22, 2009, to file her state law claims. Martinez filed her suit on December 21, 2009. However, Martinez claims that her administrative charge tolled the statute of limitations. Therefore, the pertinent question before this Court is whether or not Martinez's administrative charge was facially sufficient to toll her claims.

"The Supreme Court of Puerto Rico has held that out-of-court notification before an administrative proceeding has a tolling value, and there is nothing against having statute of limitations rights indefinitely extended ... as long as the defendant is properly notified." Lopez-Machin v. Indupro, 668 F.Supp.2d 320, 324 (D.P.R. 2009)(citing Matos Molero v. Roche Prods., Inc., 132 D.P.R. 470 (1993))(internal citations and quotation marks omitted). The First Circuit held that "Puerto Rico law recognizes a special tolling rule for employment discrimination claims brought pursuant to Law 100 [& Law 69] ... whereby once an administrative charge is made at the Puerto Rico Department of Labor, [or the EEOC,] the tolling effect continues during the entire pendency of the administrative proceeding." Id. at 324-25 (citing Rodriguez-Torres v. Caribbean Forms Manufacturer, Inc., 399 F.3d 52, 61 (1st Cir. 2005))(internal citations and quotation marks omitted). "The tolling rule is part of Law 100, but the Puerto Rico Supreme Court extended it to administrative claims before the EEOC in Matos Molero, 132 D.P.R. 470." Id. "Furthermore, Law 100 is interpreted in *pari materia* with other employment laws, so if tolling is applied to Law 100 it should also extend to Law 3." Id. (citing Cintron-Alonso v. GSA Caribbean Corp., 602 F.Supp.2d 319, 324 (D.P.R. 2009)). By this logic, if tolling is applied to Law 100 it should also extend to Law 69 and Law 17.

CEVA posits that Martinez's administrative charge failed to toll the statute of limitations because an extrajudicial claim can only toll the statute of limitations for the same claim asserted and not for all claims arising out of the same facts. CEVA claims that Martinez's administrative charge did not assert that she felt discriminated or retaliated against because of gender or age. The Court is inclined to agree, in part, with CEVA on this point.

According to the Supreme Court of Puerto Rico, an extrajudicial claim tolls the statute of limitations, however, the extrajudicial claim must present the identical cause of action as the claim later presented in court.  Cintron v. E.L.A., 127 P.R. Offic. Trans. 582 (1990); see also Matos Ortiz v. Com. of Puerto Rico, 103 F.Supp.2d 59, 62 (D.P.R. 2000).

Martinez's administrative charges allege that she was subjected to discrimination on account of her age, as well as her disability. However, Martinez's complaint states that she seeks relief pursuant to Law 100 because she was discriminated against on account of her sex and her age. As a result, the Court finds it appropriate to dismiss Martinez's sex discrimination claim under Law 100. However, Martinez's administrative charges did check the age box. As a result, the Court finds that Martinez effectively tolled her age-based Law 100 claim.

The issue becomes somewhat more complicated in regards to Law 17 and Law 69. Law 17 addresses sexual harassment in employment and Law 69 addresses gender discrimination. The Court concludes that Martinez's Law 17 and Law 69 claims were not effectively tolled. Even if Law 100 and its brethren are to be interpreted in *pari materia*, this does not mean that Martinez who successfully tolled her Law 100 age discrimination claim also tolled her Law 17 and Law 69 gender discrimination claims. Martinez's administrative charges only check the box for age and disability discrimination. Moreover, both of the narratives that accompany Martinez's administrative charges fail to provide any indication of sexual or gender harassment. "Thus, the running of statutes of limitation for causes of action not contained in an extrajudicial claim will not be tolled." Leon-Nogueras v. University of Puerto Rico, 964 F.Supp. 585, 588 (D.P.R. 1997).

As a result of the foregoing, the Court finds it appropriate to dismiss Martinez' Law 69 and Law 17 claims.

### 2. *Law 100*

CEVA submits in the alternative that Martinez's Law 100 claim should be dismissed for the same reasons stated in its discussion of Title VII and ADEA. Law 100 provides similar protection to that provided by ADEA and Title VII. However, "Law 100 establishes a rebuttable presumption that the employer has discriminated illegally unless the employer can show that the discharge was justified." Baltodano v. Merck, Sharp & Dohme (I.A.) Corp., 637 F.3d 38, 42 (1st Cir. 2011)(citing Alvarez-Fonseca v. Pepsi Cola of Puerto Rico Bottling, 152 F.3d 17, 27 (1st Cir. 1998)). The Puerto Rico Supreme Court has required Law 100 plaintiffs to produce some evidence of the type of discrimination alleged before the presumption of discrimination will apply. Id. (citing Diaz v. Wyndham Hotel Corp.,2001 TSPR 141(2001)(District Court Certified Translation)). More specifically, the plaintiff employee must prove three elements: (1) that there was prejudicial termination or action; (2) that it was done or taken without just cause; and (3) evidence must be presented indicating the discrimination mode linked to the termination. Diaz, 2001 TSPR 141. Once the Law 100 presumption has been triggered, the burdens of production and persuasion shift to the employer. Thus, in order to rebut the Law 100 presumption the employer must prove by a preponderance of the evidence, that the challenged action was not discriminatory. Thermo King de Puerto Rico, Inc., 585 F.3d at 453 (citing Alvarez-Fonseca v. Pepsi Cola of P.R. Bottling Co., 152 F.3d 17, 27-28 (1st Cir. 1998)).

The Puerto Rico Supreme Court held that "because Law 100 did not define the term "just cause," the term's definition would be sought in an analogous statute-the Puerto Rico Law on Unjustified Dismissals, Law 80 of May 30, 1976, P.R. LAWS ANN. TIT. 29, §§ 185a-185k." Alvarez-Fonseca, 152 F.3d at 28 (citing Baez Garcia v. Cooper Laboratories, Inc., 20 P.R. Offic. Trans. 153 (1987)). According to Law 80, a dismissal without just cause is one that is not permitted by the statute. Id. (citing P.R. Laws Ann. tit. 29, § 185e). Law 80 allows dismissals for a number of reasons, but disallows dismissals made by mere whim or fancy of the employer or without just cause related to the proper and normal operation of the establishment. Id. (citing P.R. LAWS ANN. tit. 29, § 185b). "Once the plaintiff has proven

that he was directly or constructively discharged, Law 80 shifts the
burden of proof to the employer to show that the discharge was
justified." Id. (citing P.R. LAWS ANN. TIT. 29, § 185k).

> "It follows that the Law 100 presumption that a dismissal
> was discriminatory depends on the Law 80 presumption that
> the dismissal was unjustified. Stated more explicitly, the
> Law 80 presumption is triggered when the plaintiff alleges
> unjustified dismissal and proves by a preponderance of the
> evidence that he was actually or constructively discharged.
> The burden then shifts to the employer to prove by a
> preponderance of the evidence that it had just cause to
> dismiss the employee. If the employer fails to make this
> showing, the Law 100 presumption of discrimination is
> triggered, shifting the burden to the employer of proving by
> a preponderance of the evidence that the
> otherwise-unjustified dismissal was not motivated by
> discriminatory animus."

> Id.

    CEVA has not shown that it had just cause for dismissal.
Therefore, Martinez's Law 100 age-based discrimination claim remains.

### 3. Article 1802 and 1803

    Martinez further seeks relief for intentional infliction of
emotional distress ("IIED") and negligent conduct on the part of CEVA.
31 P.R. Laws Ann. §§ 5141 and 5142. CEVA posits that the conduct
Martinez complains about is not covered by these sections of the
Puerto Rican Civil Code because Martinez's claims should be considered
under the framework of Law 100 and its brethren.

    Our sister court held in Lopez-Mendez v. Lexmark Intern., Inc.,
that an IIED cause of action that falls squarely within the cause of
action for discrimination does not give rise to an independent cause
of action under a separate tort. 627 F.Supp.2d 66, 71 (D.P.R. 2009).
In other words, Martinez's cause of action falls squarely within the
Law 100 cause of action and as a result should be dismissed. The Court

agrees with the approach espoused in <u>Lopez-Mendez</u>. Consequently, the Court finds the dismissal of Martinez's Article 1802 claim appropriate. Similarly, Martinez's claim under Article 1803 is also dismissed.

### 4. Law 45 Puerto Rico Worker's Compensation Act

Article 5(a) of Law 45 provides that:

> "In the cases of working disability according to the provisions of this chapter; the employer shall be under obligation to reserve the job filled by the laborer or employee at the time the accident occurred, and to reinstate him therein, subject to the following conditions:
>
> (1) That the laborer or employee demand reinstatement from his employer in his job within the period of fifteen (15) days counted from the date the laborer or employee is discharged from treatment, provided such demand is not made after the lapse of twelve months from the date of the accident;
>
> (2) That the laborer or employee be mentally and physically fit to fill said job at the time he demands reinstatement from his employer, and
>
> (3) That said job still exists at the time the laborer or employee demands reinstatement. (The job shall be understood to exist when the same is vacant or is being filled by another laborer or employee. The job shall be presumed to be vacant when the same was filled by another laborer or employee within thirty (30) days following the date in which the demand for reinstatement was made.)"

P.R. Laws Ann. tit. 11, § 7

"The Supreme Court of Puerto Rico has found that Article 5(a) has two components: (1) the obligation to keep the injured employee's job available for one year and, (2) the obligation to reinstate him after the SIF discharges him, so long as the employee seeks reinstatement within the one year reserve period and he meets the three statutory conditions." Grillasca-Pietri v. Portorican American Broadcasting Co., Inc., 233 F.Supp.2d 258, 265 (D.P.R. 2002)(citing Garcia v. Darex Puerto Rico, 148 D.P.R. 364 (P.R. 1999)).

CEVA claims that Martinez's complaint is time-barred because she failed to submit it within the three-year statute of limitations period. CEVA further posits that the statute of limitations was not tolled because the ADU where Martinez filed her administrative charge does not have jurisdiction over claims presented under the Puerto Rico Worker's Compensation Act. In order to prove its argument CEVA cites to Article 3 of the General Regulation of the Antidiscrimination Unit. It is unclear to the Court what counsel is citing to. As a result, the Court cannot agree with CEVA's argument.

Lastly, CEVA claims that Martinez failed to provide factual allegations that the Customer Service Representative position was available at the time of her reinstatement. The Court is unconvinced by this argument.

The Court does not find it prudent to dismiss Martinez's Worker's Compensation Act claim at this juncture. The Court is not convinced by CEVA's argument that Martinez has failed to state a plausible claim for relief under Puerto Rico's Worker's Compensation Act. As a result, finds that it would be premature to dismiss the claim at this moment.

### 5. *Law 115*

Martinez has advanced a claim pursuant to Law 115. Martinez claims that CEVA retaliated against her because: (1) CEVA refused to reinstate her to her former position as Customer Service Supervisor in December 2005; (2) CEVA created a hostile work environment once she had been assigned to the Inside Sales Representative position; (3) CEVA refused to reinstate her to her former position as Customer Service Representative on December 2007; (4) CEVA prohibited Martinez

from returning to work; and (5) CEVA submitted her to a hostile work environment.

The Court agrees with CEVA's argument Law 115 does not address claims alleging failure to reinstate. Thus, Martinez's claims (1) and (3) are not actionable under Law 115. However, the Court does not agree with CEVA's repetitive argument that Martinez's allegation is devoid of any factual allegations that would entitle her to relief. Therefore, the Court finds no reason to dismiss Martinez's remaining Law 115 claims.

### 6. *Law 44*

CEVA posits that Martinez's Law 44 claim should be dismissed because it mirrors her ADA claim. The Court found no reason to dismiss Martinez's ADA claim. Similarly, the Court does not find appropriate to dismiss Martinez's Law 44 claim.

### 7. *Law 80*

CEVA argues that Martinez's Law 80 claim should be dismissed because she has failed to advance a plausible claim per Iqbal. The Court does not agree with CEVA. Therefore, Martinez's Law 80 claim remains.

### IV. CONCLUSION

For the reasons explained above, the Court **GRANTS IN PART AND DENIES IN PART** CEVA's motion to dismiss. The Court hereby **DISMISSES** Martinez's Title VII and ADEA claims, as well as her claims under the Fifth, Ninth, Tenth, and Fourteenth Amendments of the United States Constitution. The Court also deems it appropriate to **DISMISS** Martinez's Law 69, Law 17, and Article 1802 and 1803 claims.

**IT IS SO ORDERED.**
In San Juan, Puerto Rico, August 26, 2011.

S/ JUAN M. PEREZ-GIMENEZ
JUAN M. PEREZ-GIMENEZ
U.S. DISTRICT JUDGE